[Cite as *State v. Cornelius*, 2011-Ohio-2564.]

IN THE COURT OF APPEALS OF MIAMI COUNTY, OHIO

STATE OF OHIO                        :

    Plaintiff-appellee          :     C.A. CASE NO. 10CA10

vs.                                  :     T.C. CASE NO. 09CR429A

KYLE A. CORNELIUS                    :     (Criminal Appeal from
                                           Common Pleas Court)
    Defendant-Appellant         :

. . . . . . . .

O P I N I O N

Rendered on the 27th day of May, 2011.

. . . . . . . . .

James D. Bennett, Atty. Reg. No.0022729, First Asst. Pros. Attorney, 201 West Main Street, Troy, OH 45373
    Attorney for Plaintiff-Appellee

John C. Califf, Atty. Reg. No.0071800, 15 West Race Street, Troy, OH 45373
    Attorney for Defendant-Appellant

. . . . . . . . .

GRADY, P.J.:

{¶ 1} Defendant, Kyle A. Cornelius, appeals from his conviction for Interference with Custody, R.C. 2919.23(A)(1).

{¶ 2} Defendant Cornelius met Lindsay McHugh through an internet connection when McHugh was fifteen or sixteen years of age.  From that time, Defendant repeatedly urged McHugh to join

him in North Carolina.  On September 3, 2009, McHugh departed from her home in Piqua, Ohio, and traveled to Raleigh, North Carolina with Defendant and another man, Thomas Steen.  The three were located there the following day, and McHugh was returned to her home in Piqua.

{¶ 3}  Lindsay McHugh was born on May 20, 1991.  On September 2, 2008, the Van Wert County Juvenile Court awarded custody of McHugh to her cousins, David and Lynne Steele, with whom McHugh resided at their home in Piqua, Ohio, in Miami County.  The custody award was made with the agreement of McHugh's parental custodian, her mother, on a finding that the award was in McHugh's best interest.  McHugh was seventeen years of age when the custody award was made.  She became eighteen years of age on May 20, 2009.

{¶ 4}  Defendant was charged with two felony offenses arising from conduct that occurred "on or about September 3, 2009," the date on which he took McHugh to North Carolina: abduction, R.C. 2905.02(A)(1), and interference with custody, R.C. 2919.23(A)(1).  The State dismissed the abduction charge.  Defendant waived his right to a jury trial on the interference with custody charge.  Defendant was tried by the court, which on January 11, 2010, entered its general findings of guilty.  (Dkt. 17).  On February 23, 2010, Defendant was sentenced to an eleven-month prison term and ordered to pay the costs of the action.

{¶ 5} Defendant filed a premature notice of appeal on February 22, 2010.  He presents five assignments of error for review.

THIRD ASSIGNMENT OF ERROR

{¶ 6}  "THE EVIDENCE PRESENTED ON THE ISSUE OF WHETHER THERE WAS AN ABSENCE OF PRIVILEGE, SPECIFICALLY WHETHER AT THE TIME OF THE ALLEGED CRIME THERE WAS SOME SORT OF GUARDIANSHIP OR PARENTAL OR CUSTODIAL RELATIONSHIP, WAS NOT OF THE QUALITY OR QUANTITY TO CONVINCE THE AVERAGE MIND OF GUILT BEYOND A REASONABLE DOUBT."

{¶ 7}  This assignment of error presents a sufficiency of the evidence question.  Sufficiency of the evidence and weight of the evidence are distinct concepts to which different legal tests apply.  *State v. Thompkins* (1997), 78 Ohio St.3d 380; *State v. Hufnagle* (Sept. 6, 1996), Montgomery App. No. 15563, unreported.

{¶ 8}  "Sufficiency" of the evidence refers to its logical capacity to demonstrate both the criminal conduct and the culpable mental state that the alleged criminal liability requires.  The test is whether all or some part of the evidence that was admitted in the trial would, if believed, convince the average mind beyond a reasonable doubt that the defendant is guilty of committing the offense charged.  *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.  "Weight" of the evidence refers to the inclination of the greater amount of the credible evidence presented in a trial to prove the issue established by the verdict

that was reached. *State v. Thompkins* (1997), 78 Ohio St.3d 380. The test is whether that evidence is capable of inducing belief in its truth, and whether those truths preponderate in favor of the verdict according to the applicable burden of proof. *Id*.

{¶ 9} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, paragraph two of the Syllabus by the Court citing and following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶ 10} R.C. 2919.23(A) provides:

{¶ 11} "No person, knowing the person is without privilege to do so or being reckless in that regard, shall entice, take, keep, or harbor a person identified in division (A)(1), (2), or (3) of this section from the parent, guardian, or custodian of the person identified in division (A)(1), (2), or (3) of this section:

{¶ 12} "(1) A child under the age of eighteen, or a mentally or physically handicapped child under the age of twenty-one;

{¶ 13} "(2) A person committed by law to an institution for delinquent, unruly, neglected, abused, or dependent children;

{¶ 14} "(3) A person committed by law to an institution for the mentally ill or mentally retarded."

{¶ 15} The indictment charged Defendant with a violation of R.C. 2919.23(A)(1) in the terms of the statute, with respect to conduct involving "a mentally or physically handicapped child under the age of twenty-one." (Dkt. 1). No reference is made to the alternative grounds in the statute which involve conduct involving "[a] child under the age of eighteen."

{¶ 16} David Steele testified that McHugh has mental deficiencies. She attended special individual education classes at Piqua High School, and her social skills were not well-developed and had led to problems dealing with the other students. Steele also testified that McHugh has physical disabilities in that she is blind in her right eye and has impaired vision in her left eye. During Detective Burnside's interview of Defendant, Defendant stated that early on in his conversations with McHugh he learned she was "retarded."

{¶ 17} Dr. Fred Sacks, who performed a psychological evaluation on McHugh, testified that her full scale IQ is 75. Below 70 generally indicates retardation. McHugh is severely impaired in her logical and abstract reasoning, and her greatest weakness is

understanding her world, making sense out of it, and responding to challenges. She doesn't recognize risks. School records indicate McHugh has problems adapting to rules and conducting herself appropriately in a school setting. She also has academic achievement problems and is in an individualized education program at school. Dr. Sacks testified that McHugh is at significantly greater risk for being taken advantage of and manipulated than average teens her age, and that she needs continued supervision or guardianship until age twenty-one.

{¶ 18} In order to prove the violation of R.C. 2919.23(A)(1) charged, the State was required to prove that the "mentally or physically handicapped child" victim of the offense was at the time of its commission under twenty-one years of age and subject to rights conferred by law on the victim's parent, guardian, or custodian, and that the offender, being without privilege or reckless in that regard, enticed, took, kept, or harbored the victim from the victim's parent, guardian, or custodian.

{¶ 19} Defendant argues that the evidence offered at trial was insufficient to prove that he acted without privilege when he took Lindsay McHugh to North Carolina on September 3, 2009 because, being then eighteen years of age, and absent an adult guardianship, McHugh was not then subject to any parental, custodial, or guardianship rights conferred by law on another person.

Defendant's argument relies on R.C. 3109.01, which prescribes the age of majority, and provides: "All persons of the age of eighteen years or more, who are under no legal disability, are capable of contracting and are of full age for all purposes."

{¶ 20} In its General Findings After Trial To The Court (Dkt. 17), the court made the following finding of fact and law with respect to the custodial status of Lindsay McHugh, at p. 17:

{¶ 21} "In the present case, the Court concludes David and Lynne Steele were custodians of Lindsay as that term is used in O.R.C. 2919.23(A)(1), in that they had officially been placed in charge of her shelter, care, protection and the continuation of her education and that obligation remained in effect as of September 3, 2009, notwithstanding her reaching her 18th birthday."

{¶ 22} The court reasoned that the juvenile court's September 8, 2008 custody order remained in effect on September 3, 2009, because the juvenile court retained jurisdiction following McHugh's eighteenth birthday on May 20, 2009, due to the fact that McHugh is unable to care for herself. The court relied on *Castle v. Castle* (1984), 15 Ohio St.3d 279, which held that, absent a statute to the contrary, the common law duty imposed on parents for the care of their children may continue beyond the age of majority if the children remain unable to care for themselves because of mental or physical disabilities, and in that event the

domestic relations court retains jurisdiction to continue or modify support payments for the child beyond the age of majority.

{¶ 23} We do not agree that *Castle* controls in the present case, for several reasons. First, the Van Wert County Juvenile Court's order of September 2, 2008, granting custody of McHugh to the Steeles, made no findings regarding McHugh's mental or physical disabilities. Second, *Castle* was a civil case and, per R.C. 2901.04(A), in criminal cases "sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." Third, a statute denies the jurisdiction of the juvenile court which the trial court found.

{¶ 24} R.C. 2151.353(A) provides that the juvenile court may award custody of an abused, neglected, or dependant child to a parent or another movant who seeks custody, subject to certain qualifications regarding the custodian. That section further provides that the custodian's responsibility continues past the child's eighteenth birthday while the child remains in school. R.C. 2151.353(J) provides:

{¶ 25} "<u>The jurisdiction of the court shall terminate one year after the date of the award</u> or, if the court takes any further action in the matter subsequent to the award, the date of the latest further action subsequent to the award, if the court awards legal

custody of a child to either of the following:

{¶ 26} "(1) <u>A legal custodian who</u>, at the time of the award of legal custody, <u>resides in a county of this state other than the county in which the court is located</u>." (Emphasis supplied.)

{¶ 27} The agreed custody order of the Van Wert County Juvenile Court (Ex. 1) granting custody of McHugh to the Steeles fails to reflect the basis of that award, other than that it was upon a complaint filed by David and Lynne Steele and that it was in McHugh's best interest to make the award. No basis for an adjudication of delinquency is suggested. Necessarily, therefore, the award was predicated on a finding of abuse, dependency, or neglect, and was made pursuant to R.C. 2151.353(A)(3).

{¶ 28} When the custody order was journalized on September 2, 2008, the Steeles were residents of Miami County. No evidence was presented that the Van Wert County Juvenile Court took any further action in the matter subsequent to the order of September 2, 2008. Therefore, per R.C. 2151.353(J), the jurisdiction of the court that entered that order terminated one year later, on September 2, 2009. That termination concludes any continued jurisdiction the court may have enjoyed past the child's age of majority in relation to her continued education pursuant to R.C. 2151.353(A)(3)(b).

{¶ 29} Because the jurisdiction of the juvenile court that

entered the order granting custody of McHugh to the Steeles terminated on September 2, 2009, that order had no force of effect on September 3, 2009, the date on which Defendant took McHugh to North Carolina. The evidence was therefore insufficient to support the trial court's express finding that, on that date, Defendant took McHugh from persons to whose custody she had been committed. Because the element of custody is essential to a violation of R.C. 2919.23(A)(1) alleged, the trial court erred when it found Defendant guilty of that offense and convicted him accordingly.

{¶ 30} The third assignment of error is sustained.

**FIRST ASSIGNMENT OF ERROR**

{¶ 31} "IT WAS REVERSIBLE ERROR TO CONVICT APPELLANT UNDER R.C. 2919.23(A)(1) BECAUSE THE STATUTE IS SO VAGUE AND INCOMPREHENSIBLE TO ENSURE INDIVIDUALS OF COMMON INTELLIGENCE ARE ABLE TO DETERMINE WHAT CONDUCT IS PROHIBITED; AS TO WHAT CONSTITUTES MENTALLY OR PHYSICALLY HANDICAPPED UNDER THE CRIMINAL STATUTE."

**SECOND ASSIGNMENT OF ERROR**

{¶ 32} "THE EVIDENCE PRESENTED ON THE ISSUE OF WHETHER THE PERSON WAS 'MENTALLY OR PHYSICALLY HANDICAPPED' WAS NOT OF THE QUALITY OR QUANTITY TO CONVINCE THE AVERAGE MIND OF GUILT BEYOND A REASONABLE DOUBT."

**FOURTH ASSIGNMENT OF ERROR**

{¶ 33} "THERE WAS NO EVIDENCE OF ANY KIND ESTABLISHING THAT AT THE TIME OF THE ALLEGED CRIME APPELLANT KNEW OR WAS RECKLESS WITH RESPECT TO THE EXISTENCE OF A GUARDIANSHIP OR CUSTODIAL OR PARENTAL RELATIONSHIP. THERE ALSO WAS NO DETERMINATION OR FINDING BEYOND A REASONABLE DOUBT AS TO THAT ELEMENT."

### FIFTH ASSIGNMENT OF ERROR

{¶ 34} "THE APPELLANT WAS IMPROPERLY CONVICTED BY THE LACK OF PROOF OR FINDING OF PROOF BEYOND A REASONABLE DOUBT ON THE MENS REA ELEMENT OF KNOWLEDGE OR RECKLESSNESS AS TO WHETHER THE PERSON WAS MENTALLY OR PHYSICALLY HANDICAPPED."

{¶ 35} The errors assigned in the first, second, fourth, and fifth assignments of error are made moot by our decision sustaining the third assignment of error. We therefore decline to decide the error assigned. App.R. 12(A)(1)(c). Nevertheless, we believe that one of Defendant's arguments should be addressed, that being his claim that R.C. 2919.23(A)(1) is unconstitutionally void for vagueness because the operative term "mentally or physically handicapped child," as it appears in that section, lacks a clear definition.

{¶ 36} The Revised Code contains no definition of the term "mentally or physically handicapped." Former R.C. 3323.01(A) defined the term "handicapped child." That section was amended by 2007 H 119, effective September 29, 2007. It now defines "child

with a disability," and provides:

{¶ 37} "(A) 'Child with a disability' means a child who is at least three years of age and less than twenty-two years of age; who has mental retardation, a hearing impairment (including deafness), a speech or language impairment, a visual impairment (including blindness), a serious emotional disturbance, an orthopedic impairment, autism, traumatic brain injury, another health impairment, a specific learning disability, deaf-blindness, or multiple disabilities; and who, by reason thereof, needs special education and related services.

{¶ 38} "A 'child with a disability' may include a child who is at least three years of age and less than six years of age; who is experiencing developmental delays, as defined by standards adopted by the state board of education and as measured by appropriate diagnostic instruments and procedures in one or more of the following areas: physical development, cognitive development, communication development, social or emotional development, or adaptive development; and who, by reason thereof, needs special education and related services."

{¶ 39} A number of sections of the Revised Code employ the term "mentally or physically handicapped child," or some variation of

it, without a stated or referenced definition of the term.[1] Several decisions prior to the amendment of R.C. 3323.01(A) relied on that section's definition of "handicapped child" to find the necessary definition. See: *State v. Jennings* (July 12, 1989), Summit App. No. 13896; *State v. McNeil* (July 12, 1989), Summit App. No. 13896. Such reliance is no longer available after R.C. 3323.01(A) was amended to instead define "child with a disability." An earlier decision, *State v. Turner* (1965), 3 Ohio App.2d 5, devised its own "dictionary definition of mentally handicapped child," with reference to the legislative intent the court found in the statue concerned. An express legislative definition is preferred.

{¶ 40} All statutes are presumed constitutional, but an enactment may be void for vagueness and violate due process if its prohibitions are not clearly defined. A statute is void for

---

[1] The term "mentally or physically handicapped child" likewise appears in R.C. 2903.15(A), permitting child abuse; and R.C. 2919.21(A)(2), nonsupport of dependents; R.C. 2919.22(A), endangering children. The term is also employed in R.C. 2931.02, criminal jurisdiction of county courts; R.C. 2945.42, competency of witnesses; R.C. 3313.06, failure to pay child agency costs; failure to comply, R.C. 3113.08. The term "handicapped children" appears in various forms in R.C. 3119.23, deviations in child support; R.C. 3701.022, defining medically handicapped children; R.C. 3701.027, pertaining to grant programs; R.C. 5104.011(F)(1), creating rules regarding handicapped children; and in R.C. 5153.163, regarding payments to parents of adoptive children with disabilities.

vagueness if it (1) fails to provide sufficient notice of its proscriptions and (2) fails to contain reasonably clear guidelines to prevent official arbitrariness or discrimination in its enforcement. *Perez v. Cleveland*, 78 Ohio St.3d 376, 1997-Ohio-33.

{¶ 41} We urge the General Assembly to cure the possible definitional defect in R.C. 2919.23(A)(1) and other sections of the Revised Code by providing a clear definition for the term "mentally of physically handicapped child." Alternatively, that and other sections which employ the term may be amended to instead apply to "a child with a disability," as that term is now defined by R.C. 3323.01(A).

{¶ 42} Having sustained the third assignment of error, we will reverse and vacate Defendant's conviction for a violation of R.C. 2919.23(A)(1).


FROELICH, J. And BROGAN, J., concur.

(Hon. James A. Brogan, retired from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)


Copies mailed to:

James D. Bennett, Esq.
John C. Califf, Esq.
Hon. Robert J. Lindeman