[Cite as *State v. Villamor-Goubeaux*, 2016-Ohio-7420.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MIAMI COUNTY**

STATE OF OHIO                               :
                                            :
    Plaintiff-Appellee                  :    C.A. CASE NO.   2015-CA-29
                                            :
v.                                          :    T.C. NO. 14CR151
                                            :
EVA O. VILLAMOR-GOUBEAUX                     :    (Criminal Appeal from
                                            :     Common Pleas Court)
    Defendant-Appellant                 :
                                            :
       . . . . . . . . . .

**O P I N I O N**

Rendered on the ___21st___ day of _____October_____, 2016.

. . . . . . . . . .

RYAN C. SPITZER, Atty. Reg. No. 0093515 and PAUL M. WATKINS, Atty. Reg. No. 0090868, Assistant Prosecuting Attorneys, 201 W. Main Street, Safety Building, Troy, Ohio 45373
    Attorneys for Plaintiff-Appellee

DAVID P. WILLIAMSON, Atty. Reg. No. 0032614, 400 PNC Center, 6 N. Main Street, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

    **{¶ 1}** Eva O. Villamor-Goubeaux was found guilty after a bench trial in the Miami County Court of Common Pleas of interference with custody in violation of R.C. 2919.23(A)(1), a felony of the fifth degree.  She was sentenced to three years of

community control and was ordered to pay restitution to her former husband, Michael Goubeaux, in the amount of $1,570.74. Villamor-Goubeaux appeals from her conviction.

{¶ 2} For the following reasons, the judgment of the trial court will be affirmed.

## I.    Facts and Procedural History

{¶ 3}  Villamor-Goubeaux and Goubeaux were married in 2009 and had one child during their marriage, a daughter. They separated in December 2012, and Goubeaux filed for divorce in January 2013. On April 3, 2013, the parties filed a "Magistrate's Order/ Agreed Entry" related to their "temporary parenting times and child support." The agreement provided, in pertinent part, that: 1) the child would live at the marital residence in Troy; 2) Goubeaux was entitled to parenting time with the child pursuant to the Miami County Standard Order of Parenting Time, which was attached; 3) Villamor-Goubeaux was granted "exclusive occupancy" of the marital home; and 4) neither party would remove the child from the State of Ohio "except for a period not to exceed 14 days during their scheduled parenting times." The Agreed Entry did not otherwise expressly address the issue of "custody."

{¶ 4}  In the fall of 2013, Villamor-Goubeaux left her employment as a nursing instructor in hopes of finding a better-paying job. Soon thereafter, she concluded that her job prospects were better in other states, and she spoke with her attorney about seeking a modification of the provision in the Agreed Entry that prevented either party from removing the child from Ohio for more than 14 days, because she wanted to move out of state. Around Thanksgiving 2013, before a motion for modification of the agreement had been filed or granted and without notice to Goubeaux, Villamor-Goubeaux moved to New Jersey with the child, who was then four years old.

{¶ 5} On December 11, 2013, Villamor-Goubeaux's attorney requested a continuance of a final hearing on the parties' divorce, which was scheduled for December 19, due to personal health issues; he indicated that, if the request were denied, he would "have to resign" from the case. On December 12, the attorney informed Goubeaux's attorney that Villamor-Goubeaux was out of state seeking employment. After Goubeaux was notified of Villamor-Goubeaux's departure from the state,[1] Goubeaux filed a "Motion for Emergency Interim Custody; Motion for Restraining Order; Motion for Exclusive Use [of the marital property]."

{¶ 6} On December 16, the trial court granted temporary interim custody of the child to Goubeaux. The same day, Villamor-Goubeaux's attorney filed a motion to modify the Agreed Entry of April 2013 and requested that the court address the issue at the December 19 hearing (which the attorney had already asked to continue). The court agreed to address the requested modification at the hearing, but it did not rule on the request for a continuance.

{¶ 7} Neither Villamor-Goubeaux nor her attorney appeared at the December 19 hearing, and the trial court denied the attorney's "request to withdraw." The trial court proceeded to hear the issues related to the divorce. Villamor-Goubeaux later claimed that she had been traveling to Ohio from New Jersey for the hearing when she learned from her attorney via voicemail that he had resigned, that the case "shouldn't go ahead," and that she needed to hire a different lawyer. Villamor-Goubeaux, who was then in

---

[1] At trial, Villamor-Goubeaux presented, as exhibits, copies of numerous filings with the trial court in the custody proceedings. Because these copies do not include the court's file stamp, and because the court's record of the custody proceedings is not part of the criminal proceedings and therefore is not before us, the exact dates of some filings are unclear.

Youngstown, Ohio, turned around and returned to New Jersey.

{¶ 8} In January 2014, Villamor-Goubeaux hired a new Ohio attorney and accepted a job offer in Nevada. On February 4, 2014, a complaint for interference with custody was filed by the Troy Police Department against Villamor-Goubeaux in the Miami County Municipal Court, and a warrant for her arrest was issued. She was arrested in Nevada on February 27, 2014.

{¶ 9} Villamor-Goubeaux did not communicate with Goubeaux or the court about her whereabouts or attempt to arrange any contact between Goubeaux and their child at any time between Thanksgiving 2013 and February 27, 2014.

{¶ 10} On May 22, 2014, Villamor-Goubeaux was indicted in the Miami County Common Pleas Court for interference with custody, in violation of R.C. 2919.23(A)(1). She pled not guilty and filed a motion to dismiss the indictment, which was denied. The matter was tried to the court in September 2015, and she was found guilty. She was sentenced as described above.

{¶ 11} Villamor-Goubeaux appeals from her conviction, raising three assignments of error.

## II. Legal Effect of "Custody"

{¶ 12} The first assignment of error states:

**The trial court erred by denying Appellant's motions [sic] to dismiss and failing to find that custody is an essential element of the statute (O.R.C. §2919.23).**

{¶ 13} Under this assignment of error, Villamor-Goubeaux argues that, as a matter of law, a custodial parent cannot be found to have interfered with custody. On

this basis, she asserts that the trial court should have granted her motion to dismiss or should have acquitted her.

{¶ 14} As a preliminary matter, we observe that the parties' Agreed Entry refers only to the parenting times of each party and the "primary residence" of the child, which was the marital home; the parties also agreed that Villamor-Goubeaux would have "exclusive occupancy" of the marital home until further order of the court. Thus, the child resided primarily with Villamor-Goubeaux at the marital home. The parenting time schedule also gave Villamor-Goubeaux more time with the child. Although both parties testified at the criminal trial using the terminology that Villamor-Goubeaux had "custody" of the child under the April 2013 Agreed Entry, that agreement did not designate Villamor-Goubeaux as the custodial parent or otherwise specify that she had superior rights to Goubeaux in making decisions involving the child.

{¶ 15} In *In re: P.T.P.*, 2d Dist. Greene No. 2005 CA 148, 2006-Ohio-2911, involving parties that were never married, the trial court originally granted father's motion for visitation, but never designated either party as residential parent or legal custodian. The court addressed a subsequent motion for custody by father as an original custody determination, and thus did not require a finding of change of circumstances pursuant to R.C. 3109.04(E)(1)(a). We held that although the trial court could have treated the prior order as a "de facto designation of custody," it did not err in finding that its prior order was limited to visitation.

{¶ 16} *In re: A.N.*, 2d Dist. Greene Nos. 2010-CA-83 and 2011-CA-7, 2011-Ohio-2422, also dealt with an unmarried couple; the parties filed an agreed entry that did not specifically mention custody or identify mother as the residential parent, but provided that

the "father shall have parenting time with minor child in accordance with the Standard Order of Parenting Time." *Id.* at ¶ 3. The trial court found that this language constituted a de facto designation of mother as the child's residential parent and legal custodian. We affirmed on appeal and commented:

> Custody and visitation, or parenting time, are related but distinct legal concepts. *State ex rel Mosier v. Fornof*, 126 Ohio St.3d 47, 930 N.E.2d 305, 2010-Ohio-2516, ¶ 6, citing *Braatz v. Braatz* (1999), 85 Ohio St.3d 40, 44, 706 N.E.2d 1218. " 'Custody' refers to the right to ultimate legal and physical control over a child, while 'parenting time rights' grant a parent the power of temporary physical control for the purpose of visitation." *Id.*, quoting *Williamson v. Cooke*, Franklin App. No. 09AP-222, 2009-Ohio-6842, ¶ 22, in turn citing *Braatz*, supra, at 44, 706 N.E.2d 1218.

*Id.* at ¶ 14.

{¶ 17} In Villamor-Goubeaux's criminal appeal, the State does not dispute her characterization that she was the "custodial" parent, and both parents seem to have accepted this term. Accordingly, we will assume that Villamor-Goubeaux had "custody" of the child for the purpose of considering Villamor-Goubeaux's argument that a "custodial" parent cannot interfere with custody, without determining whether this characterization is legally correct.

{¶ 18} Villamor-Goubeaux argues that "interference with custody" can only occur if the child in question is taken from a person who has "custody." Villamor-Goubeaux contends that "interference with custody is not the same as interference with the parental interest of visitation." She relies, in part, on the title of R.C. 2919.23, "Interference with

Custody." Except with respect to certain sections embodying the Uniform Commercial Code, the "Title, Chapter, and section headings * * * do not constitute any part of the law as contained in the 'Revised Code'." R.C. 1.01. *See also State v. Beener*, 54 Ohio App.2d 14, 16, 374 N.E.2d 435 (2d Dist.1977) (holding that resort to a title in interpreting a statute "is unnecessary and improper"); *Dade v. Bay Village Bd. of Zoning Appeals*, 8th Dist. Cuyahoga No. 87728, 2006-Ohio-6416, ¶ 28. The text of a statute, not its title, determines its intent and scope.

**{¶ 19}** R.C. 2919.23(A)(1) provides:

No person, knowing the person is without privilege to do so or being reckless in that regard, shall entice, take, keep, or harbor a person identified in division (A)(1), (2), or (3) of this section from the parent, guardian, or custodian of the person identified in division (A)(1), (2), or (3) of this section:

(1) A child under the age of eighteen, or a mentally or physically handicapped child under the age of twenty-one[.]

The language of the statute itself provides no support for Villamor-Goubeaux's argument that its provisions do not apply to a "custodial" parent.

**{¶ 20}** Villamor-Goubeaux further argues that "[h]er designation as residential/custodial parent granted her the privilege" to have the child in her care, custody, and control, and therefore she was not "without privilege" to take or keep the child away from the child's father, as prohibited by R.C. 2919.23(A)(1). This position is basically an assertion that the "custodial" parent can do whatever he or she wants with respect to the care, custody and control of a child, notwithstanding the limitations imposed and rights granted to the non-custodial parent in a court's judgment, and not be held in

violation of the criminal law. In other words, Villamor-Goubeaux's argument concedes that she might be in contempt of court for violating the Agreed Entry's provisions concerning Goubeaux's right to have regular parenting time with the child and the prohibition on either parties' leaving the state with the child for more than 14 days, but she asserts that she was not in violation of R.C. 2919.23(A)(1) and consequently not *criminally* liable.

{¶ 21} Villamor-Goubeaux cites two cases in support of her position.

{¶ 22} In *State v. Cornelius*, 2d Dist. Miami No. 10CA10, 2011-Ohio-2564, L.M., a teenaged girl with developmental, social, and academic problems, had been placed in the custody of her cousins by a juvenile court, with the consent of her mother, approximately eight months before her 18th birthday. The placement was pursuant to an agreed order and based on the girl's best interests; the juvenile court made no findings with respect to the girl's mental or physical disabilities. *Id.* at ¶ 23, 27. Several months after L.M.'s 18th birthday, and more than one year after the juvenile court's custody order, L.M. left her cousins' home with a man she had met online (Cornelius) and went with him to North Carolina. L.M. was found the next day, and Cornelius was charged with two felonies: abduction and interference with custody in violation of R.C. 2919.23(A)(1). The State subsequently dismissed the abduction charge. *Id.* at ¶ 4.

{¶ 23} After a bench trial, the trial court found Cornelius guilty of interference with custody. The conviction was predicated on the court's conclusion that the juvenile court's custody order remained in effect beyond L.M.'s 18th birthday. The trial court relied on *Castle v. Castle*, 15 Ohio St.3d 279, 473 N.E.2d 803 (1984), which held that, absent a statute to the contrary, the common law duty imposed on parents for the care of

their children may continue beyond the age of majority if a child is unable to care for himself or herself because of mental or physical disabilities. On appeal, however, we rejected the applicability of *Castle* to the case, because there had been no findings made regarding L.M.'s mental or physical disabilities. *Cornelius*, 2011-Ohio-2564 at ¶ 23. We also noted that, unlike in a civil case (such as *Castle*), statutes defining a criminal offense must "be strictly construed against the state, and liberally construed in favor of the accused." *Id.*

{¶ 24} In *Cornelius*, we stated that in order to find the defendant guilty, the court was required to find that the victim was "subject to rights conferred by law on the victim's parent, guardian, or custodian, and that the offender, being without privilege or reckless in that regard, enticed, took, kept, or harbored the victim from the victim's parent, guardian, or custodian." *Id.* at ¶ 18. We found that there was insufficient evidence that Cornelius had acted without privilege when he took the 18-year-old out of state, "because she was not then subject to any parental, custodial or guardianship rights conferred by law on another person." Since the juvenile court's prior order granting custody of the 18-year-old terminated before she was taken out of state, the evidence was "insufficient to support the trial court's express finding that, on that date, defendant took [the 18-year-old] from a person to whose custody she had been committed." *Id.* at ¶ 29. Further, "[b]ecause the element of custody is essential to a violation of R.C. 2919.23(A)(1) *alleged*, the trial court erred when it found defendant guilty of that offense and convicted him accordingly." *Id.* (Emphasis added).

{¶ 25} Villamor-Goubeaux argues that since she had custody and Goubeaux only had visitation, she could not interfere with her own custody. However, while "custody"

was indeed an element to the violation alleged in *Cornelius*, that case does not stand for the proposition that Villamor-Goubeaux had the privilege to keep a child who was subject to rights conferred by law on the child's other parent. After the child turned 18 in the *Cornelius* case, she was not subject to rights conferred by law on anyone; the minor child here was still subject to the rights conferred on her father by the court's Agreed Entry, which ordered visitation and prohibited the child's removal from the state for more than 14 days.

{¶ 26} The question in *Cornelius* was whether, after L.M. had turned 18, any court order remained in effect so as to bring her (the "child") within the scope of R.C. 2919.23(A)(1) and permit a charge for interference with custody. Although *Cornelius* contains a statement that "the element of custody is essential to a violation of R.C. 2919.23(A)(1)," upon which Villamor-Goubeaux relies, the issues presented were very different from this case. In essence, we held that in the absence of findings regarding disability, there was no court order in effect with which the defendant could interfere. Our statement in *Cornelius* about the role of "custody" is inapplicable to the facts of this case. *Cornelius* cannot reasonably be interpreted as holding that, as between two parents of a minor child, one with "custody" of the child cannot be charged with interference with custody.

{¶ 27} Similarly, Villamor-Goubeaux cites *State v. Brickles*, 2d Dist. Montgomery No. 17526, 1999 WL 957643 (Sept. 3, 1999) for the proposition that R.C. 2919.23(A)(1) can be applied against a parent with visitation, but not a parent with custody.

{¶ 28} In *Brickles*, the defendant was a non-custodial father with visitation rights, and a dispute arose over whether he had properly exercised an option to keep his child

for a week of "summer vacation." When he did not return the child from an April weekend visitation, the police were called, and the father was charged with interference with custody under R.C. 2919.23(A)(1). The trial court found father guilty, based on its conclusion that "summer visitation" could not be exercised in April, without addressing the conflicting evidence about whether father had given and mother had received notice of the proposed extended visit.

{¶ 29} Although we recognized that "a criminal sanction is a rather blunt instrument for dealing with the myriad conflicts and minor violations that can occur in the context of custody and visitation," we rejected father's argument that a parent with visitation rights could not be charged under R.C. 2919.23(A)(1). *Id.* at * 5. We affirmed the trial court's judgment, noting that "no objectively reasonable interpretation of the visitation agreement would have given [father] the right to demand a week of visitation in April as 'summer visitation,[']" and that the trial court did not lose its way or create a manifest miscarriage of justice in concluding, based on the evidence presented, that father had acted recklessly in refusing to return the child after he learned of mother's objection to the extended visitation in April. *Id.* at * 9-10.

{¶ 30} Likewise, the Sixth District Court of Appeals has observed that, while custody and visitation matters may be better addressed through contempt proceedings in a domestic relations setting, it found no authority that mandates deference to such a court. *Toledo v. Parra*, 6th Dist. Lucas No. L-12-1261, 2013-Ohio-3182, ¶ 16-18. We agree with this assessment. To conclude that contempt proceedings must be utilized exclusively would nullify the language of R.C. 2919.23(A)(1).

{¶ 31} Villamor-Goubeaux argues that applying R.C. 2919.23(A)(1) to custodial

parents creates the possibility of criminal charges being filed when one parent is mere minutes late for an exchange of parenting time.   However, other factual variations on this offense – whether de minimis violations or extreme ones – are not before us.

{¶ 32} Villamor-Goubeaux acknowledges that the parties' Agreed Entry stated that, "unless the parties agreed otherwise or subject to a modifying order, the following [agreement] shall be the temporary and permanent Order of this Court relative to the rights and obligations of the residential and non-residential parent."   She emphasizes that she had discussed obtaining a modification with her attorney and "was in the process of seeking a modification of the domestic relations order" when she left the state with the child.   Villamor-Goubeaux seems to equate requesting a modification – or simply having discussions with her lawyer about doing so – with actually obtaining a modification from the court.

{¶ 33} But a request for a modification does not authorize the movant to take the actions for which permission is sought.   Villamor-Goubeaux's subsequent actions disregarded the fact that the Agreed Entry granted rights and responsibilities to *both* parties, and that she had no right to unilaterally alter the agreement.   Villamor-Goubeaux had the "ultimate legal and physical control over" the child by virtue of having custody, but this did not give her the privilege to disregard a court order granting Goubeaux "the power of temporary physical control for the purpose of visitation."   *In re: A.N.*, 2d Dist. Greene Nos. 2010-CA-83 and 2011-CA-7, 2011-Ohio-2422, ¶ 14.   Her argument that she "had the privilege to take, keep, and harbor her child," without regard for Goubeaux's visitation rights, until the trial court modified its custody order (or otherwise ruled on her motion) is not well taken.

{¶ 34} Moreover, even if we were to accept Villamor-Goubeaux's argument that she had any privilege[2] to keep the child away from Goubeaux under the Agreed Entry (which we do not), this privilege would have terminated when the trial court awarded temporary interim custody to Goubeaux in December 2013, and Villamor-Goubeaux would have kept the child without such "privilege" until the end of February. The fact that Villamor-Goubeaux may not have known of the change in custody because she was voluntarily out of state and not in communication with Goubeaux or the court does not alter the legal relationships among the parties; at most, it factors into the trial court's finding regarding mens rea (see below).

{¶ 35} Villamor-Goubeaux's argument that she was the "custodial" parent and that, as a matter of law, she therefore could not be charged under R.C. 2919.23(A)(1) is without merit.

{¶ 36} The first assignment of error is overruled.

### III. Sufficiency and Weight of the Evidence Regarding Mens Rea

{¶ 37} Villamor-Goubeaux's second assignment of error states:

**The verdict of the trial court was against the manifest weight of the evidence and supported by insufficient evidence.**

{¶ 38} Villamor-Goubeaux contends that the trial court erred in finding that she knew she had taken the child out of state for more than 14 days without privilege to do so or was reckless in that regard. She argues that she did not have the applicable mens rea

---

[2] "Privilege" is defined as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12).

because she acted in good faith reliance on the advice of her counsel.

{¶ 39} An argument based on the sufficiency of the evidence challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 40} When reviewing an argument challenging the weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 41} A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). A person acts recklessly when, with heedless indifference to the consequences, the person perversely disregards a known risk that his

or her conduct is likely to cause a certain result or is likely to be of a certain nature. R.C. 2901.22(C).

{¶ 42} The testimony at trial with respect to Villamor-Goubeaux's mens rea was as follows.

{¶ 43} Villamor-Goubeaux's attorney testified that he first learned that Villamor-Goubeaux was out of state in mid-December 2013. (Villamor-Goubeaux had been gone more than 14 days at that time.) The attorney and Villamor-Goubeaux had discussed her desire to file a motion to modify the provision requiring her to return to the state within 14 days, and the attorney had agreed to file such a motion; he told Villamor-Goubeaux "it was probably * * * a reasonable expectation" that she would get more time. The attorney testified, however, that he never told Villamor-Goubeaux she could go ahead and move out of state.

{¶ 44} Villamor-Goubeaux testified that she talked with her attorney about moving before she left town and that it was her "understanding," based on these discussions, that it was "ok" to seek employment out of state "because he [the attorney] will file a modification." Villamor-Goubeaux further testified that she believed her attorney would inform the court and opposing counsel of her plan.

{¶ 45} Villamor-Goubeaux testified that she had "full physical custody" of her daughter. She admitted to taking the child out of state for more than 14 days, and she stated that she did not attempt to contact Goubeaux at any point during the more than three months she was gone, including the time she briefly returned to Ohio in anticipation of the hearing on December 19, 2013. She offered various explanations for this lack of communication, including that she and Goubeaux were "not really communicating well"

around that time and that Goubeaux frequently cancelled his visits with their daughter.

**{¶ 46}** Villamor-Goubeaux also testified that she and Goubeaux had agreed to communicate only through their attorneys, but she was unable to document such an agreement. The Agreed Entry provided that the parents would communicate via email, and she did not send Goubeaux any emails during her absence. Villamor-Goubeaux also acknowledged that she did not have an attorney through which communications could have been made during some of the time she was out of state. She could not remember whether, when she did hire her second attorney to replace the first, she had told the second attorney about the parenting time agreement with Goubeaux.

**{¶ 47}** Based on the timeline presented by the attorney's and Villamor-Goubeaux's testimony, Villamor-Goubeaux had moved out of state several weeks before the request for a modification of the Agreed Entry was filed. Moreover, Villamor-Goubeaux never asserted that she believed the motion had been granted. She claimed to rely on her first attorney for all communication with Goubeaux about her and her daughter's whereabouts, notwithstanding the parties' agreement that they would communicate by email and that neither party would remove the child from the state for more than 14 days. She made no effort to permit Goubeaux to talk or visit with the child during the three months that she was out of state.

**{¶ 48}** Based on this evidence, a rational trier of fact could have found the essential elements of the interference with custody proven beyond a reasonable doubt; thus, Villamor-Goubeaux's conviction was supported by sufficient evidence. Further, we cannot conclude that the trial court clearly lost its way and created a manifest miscarriage of justice in finding that, at the very least, Villamor-Goubeaux had acted recklessly, i.e.,

she had perversely disregarded a known risk that her behavior was without privilege and would keep her child from Goubeaux for a period of time well beyond what was permitted by the parties' agreement and that she had acted with heedless indifference to the consequences of doing so. Thus, her conviction was not against the manifest weight of the evidence.

**{¶ 49}** The second assignment of error is overruled.

### IV. Amendment of the Indictment

**{¶ 50}** The third assignment of error states:

**The trial court erred in granting the State's motion to amend the indictment.**

**{¶ 51}** The State filed a motion to amend the indictment on April 15, 2015, almost five months before the trial took place. The motion stated that the "indictment misstates the full date range of the offense * * * . The indictment should read, 'On or about November 25, 2013 to on or about February 27, 2014' rather than the current, 'on or about November 25, 2013.' " Villamor-Goubeaux objected to the proposed amendment. Although the trial was, at one point, scheduled to begin the day after the motion was filed, the trial was continued to September 10, 2015, for reasons unrelated to the motion. In light of the continuance, the trial court granted the motion to amend the indictment, finding that Villamor-Goubeaux would have adequate time to prepare for trial.

**{¶ 52}** Villamor-Goubeaux argues that the change in the dates listed on the indictment "substantively changed the identity of the offense," because the proposed dates spanned more than one court order related to the custody of the child.

**{¶ 53}** Crim.R. 7(D) provides that:

The court may at any time before, during, or after a trial amend the indictment * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, * * * or to cure a variance between the indictment * * * and the proof, the defendant is entitled * * * to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made * * *.

{¶ 54} Whether an amendment changes the name or identity of the offense charged is a matter of law that we review de novo. *State v. Frazier,* 2d Dist. Clark No. 2008 CA 118, 2010-Ohio-1507, ¶ 22. "If the amendment does not change the name or identity of the crime charged, then we apply an abuse of discretion standard to review the trial court's decision to allow a Crim.R. 7(D) amendment." (Citations omitted.) *Id.* at ¶ 23. An abuse of discretion occurs when the decision of a court is "unreasonable, arbitrary, or unconscionable." (Citation omitted.) *State v. Jones*, 2015-Ohio-4116, 43 N.E.3d 833, ¶ 125 (2d Dist.), citing *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 55} Villamor-Goubeaux argues that she was denied her right to have the grand jury consider whether anything happened up to February 27, 2014, as opposed to November 25, 2013, as its indictment stated; and that she was convicted of a charge different than that returned by the grand jury. In a case involving sexual offenses against children, the Twelfth District has stated:

"An indictment compels the government to aver all material facts constituting the essential elements of an offense, the purpose of which is to afford the accused adequate notice and an opportunity to defend, and to enable the accused to protect himself from any future prosecutions for the same offense." *State v. Murrell,* 72 Ohio App.3d 668, 671 (12th Dist. 1991), citing *State v. Sellards*, 17 Ohio St.3d 169 (1985). Ordinarily, specificity as to the time and date are not essential elements of an offense, especially where the crimes alleged in the indictment constitute sexual offenses against children. *Id.;* [*State v.*] *Wagers*, 12th Dist. No. CA2009-06-018, 2010-Ohio-2311 at ¶ 17-18. The state's inability to produce specific dates and times with regard to an alleged offense is without prejudice, and without constitutional consequence, when such does not present a material detriment to the preparation of a defense. *Murrell* at 672. As such, in order for appellant's convictions to be reversed due to the amended indictment, appellant must show that his defense had been prejudiced by the amendment. *Id.* at 671.

First, we note that the amendment to the indictment in this case was proper under Crim.R. 7(D). In addition, appellant did not present any sort of defense, including an alibi defense, which would have been prejudiced by the amendment to the indictment. Therefore, even had the amendment to the indictment permitted appellant to be tried for offenses not reviewed by the grand jury, appellant was not prejudiced by the amendment. Thus, regardless of whether the amendment to the indictment affected appellant's

right to prosecution by grand jury indictment, appellant was not prejudiced by the amendment. * * *

*State v. Bokeno*, 12th Dist. Butler No. CA2011-03-044, 2012-Ohio-4218, ¶ 37.

{¶ 56} Villamor-Goubeaux did not demonstrate any prejudice as a result of the amendment, and the different court orders that were in effect during the period in question do not appear to have been relevant to the State's presentation of the evidence or the trial court's finding of guilt. Although the trial court did grant temporary custody of the child to Goubeaux during the period set forth in the indictment, which reflected a change in the parental status, this change did not have any direct bearing on the more general issue of whether Villamor-Goubeaux had kept the child from Goubeaux throughout the period listed in the indictment. As discussed above, we have rejected Villamor-Goubeaux's argument that her status as the custodial parent during part of the time period stated in the amended indictment precluded charging her under R.C. 2919.23(A)(1). The trial court did not abuse its discretion in permitting the State to amend the indictment several months before trial.

{¶ 57} The third assignment of error is overruled.

## V. Conclusion

{¶ 58} The judgment of the trial court will be affirmed.

. . . . . . . . . . . .

DONOVAN, P.J. and WELBAUM, J., concur.

Copies mailed to:

Ryan C. Spitzer
Paul M. Watkins
David P. Williamson
Hon. Christopher Gee